We will now turn to the next case on the calendar, Spanski Enterprises. Good morning, Your Honors. I'm sorry. Thank you, Your Honor. It's John Pascora of Loeb & Loeb for Spanski Enterprises. May it please the Court, I've reserved two minutes for rebuttal. This is an appeal of SEI's motion for the entry of preliminary injunctive relief. That motion was denied for a failure to establish a likelihood of success on the merits. And that merits question really turns on an issue of contractual construction. So in my initial two minutes, what I'd like to do is focus on that, SEI's proposed construction, TVPs, and the extrinsic evidence. The agreement here provides for an initial term of 25 years. The agreement is in Polish, but I'm speaking in English, of course. After the initial 25 years, the agreement provided TVP and SEI may extend its term by subsequent 10-year periods. There was one thing in this case that the two Polish linguistic experts agreed about, and it was that this provision could be read in the enumerative or listing sense. And that's SEI's expert at A238, TVP's expert at A502, and especially paragraph 30. TVP's own expert explained the enumerative use of the word end in this case. And that is, giving the example, Pete and Emma visit painting classes, can be read to mean Pete visits painting classes and Emma visits painting classes. And that is what SEI says the party's intent was in entering into this clause, allowing for an option to extend. The district court below said that was absurd, not really with a rationale, but purportedly because this would then extend a 25-year term to potentially perpetual. But there's really nothing factual or legal that makes a perpetual or potentially perpetual agreement absurd. We recognize them all the time. Lawyers' engagement letters with clients rarely have terms. And yet, we enforce these perpetual agreements. TVP, on the other hand, is arguing, well, you're going to hold me hostage to this contract. Well, we're going to hold you to the terms that you agreed to. What ended up happening? Judge Stack, you have the first question. I just have a question exactly. It's an observation. I find a certain amount of absurdity on both sides of the argument. One that you're arguing is that if you use or, well, if you use or, there's a perpetuity question. You're saying it doesn't matter that it's in perpetuity. But the argument is that if you're going to have an agreement in perpetuity, for heaven's sake, you're going to say it's in perpetuity and not just do it by and or. On the other hand, if it's and, it's hard for me to understand. And maybe you or your adversary will explain to me if it's and, why do you need that provision at all? If it's and, if both of you have to agree, then you can agree. You can agree with or without that provision. At the end of 25 years, if it's and, you get together and you say, let's do another 10 years or 5 years or 15. And then at the end of that, if it's and, you say. So, I have a problem on both sides.  And the other being surpluses on the other side, if you use the word and. And I just thought it might be helpful to you to let you know what it is that I'm focusing on. Also, and last, again, this is not a question. Well, maybe it is. The question is, what is the status now? It's been some months since the contract ran. And you, when this started out, you were seeking an injunction. But what's been going on in the last 8 or 9 months? And what is it actually you're seeking from us now? Those are my observations and questions. And you can answer them as you see fit, both sides. Thank you, Your Honor. The first point you made was interpreting this and as a conjunction, that both sides have to agree, does render this a complete nullity. Parties are free to contract. But there's another reason why you can't read it in that way. The lower court tried to give it meaning by saying, well, this provision can be read to make clear that you need mutual agreement. But that's not what the provision makes clear. The provision talks about 10 years and subsequent periods. And the district court just struck that right out of the provision. So I agree with you. And in the conjunctive sense, meaning do it together, leads to a meaningless provision. Now, you talked about or, Your Honor. Nobody's arguing or. I understand that the district court below erroneously converted SEI's argument that and means or. What the experts are saying and what is common grammar in both Polish and English is that you can use the word and in the enumerative. You're listing who has the right. PVP has the right to extend and SEI has the right to extend. And that's how we think you have to read this given that the other interpretation just renders this a nullity. Then we get to the point of your comment about it being perpetual. Well, whether it's perpetual or not, and I would submit that it's not. This is an agreement that always has a termination date. It has a fixed term, 25 years that we can add 10. Hypothetically, it could be extended. Right. But even a perpetual agreement is enforced, given certain certain details in the agreement, such as termination provisions, which are here, and also other provisions that allow renegotiations in light of really incredibly impactful subsequent events. But we don't have to resolve that perpetual issue here. The question is whether SEI can extend it this time and whether that contractual interpretation is correct. Now, I didn't lose track of your third question, which is obviously this motion was brought before the termination, the original termination after 25 years. And we were hoping that by bringing the motion that TVP would continue to provide this television content to SEI for distribution in the United States. But absent the injunction, no distribution has been going on. And it hasn't been since December of 2019. But that is an issue. Is the material being, the programming being distributed within the United States by any means or is it simply dark? Well, the answer to that is nobody is really officially distributing it in the United States. All right. Unofficially, I'm just wondering whether it's going dark or whether some other means of distribution is taking place. To be fair on the factual issue, I think it's better to say that it's dark. Now, other people in Europe are distributing the same content. Well, if somebody in the United States can get it through some other channel, you know, I don't think we need to get into that. It's just dark right now. The public is being deprived of this content pending this lawsuit. And the issue is that when we initially brought the motion, obviously there was a threat of harm to SEI's reputation and goodwill ability to make contracts. But that hasn't been mooted. I mean, the threat has been mooted. Once they pulled the programming, now it's actual harm to SEI's goodwill, reputation and ability to make contracts. That is the irreparable harm that continues to this day. So what we're asking for on appeal is to review this denial of the preliminary injunction. And if you were to agree with SEI's contractual interpretation or if you found it ambiguous and you had to get to the extrinsic evidence and that extrinsic evidence makes very clear that TVP's contractual construction is wrong because they asked to make this provision subject to mutual agreement and that never made it in the agreement. But either SEI's interpretation and construction is correct or it resolved on the extrinsic evidence. We think this court should enter a preliminary injunction and that would allow SEI to start distributing this again and to minimize its damages caused by a nine-year lapse. Judge Nardini? Yeah. Counsel, could you address the significance of the integration clause? I understand your argument, which I understand. Well, you tell me, is it your primary or your only argument that the plain language of the contract is susceptible to only one interpretation? And if you take the view, which I think I heard you say, that your primary argument is that it's unambiguous in the way that you favor and your secondary argument is that if it's ambiguous, look to extrinsic evidence. My question is, if we get to your second argument, what is the role that the integration clause plays in barring consideration of extrinsic evidence? Well, the key with the integration clause is not that it bars this court from looking to the extrinsic evidence to determine whether or not the party's intent was to grant a 10-year option to extend. What the integration clause makes clear is that any additional agreement for the parties would have to be in writing. So there's no reason for the court to interpret this clause as TVP now suggests, which is, oh, this somehow makes clear that any agreement to extend would be required to be in writing. This clause doesn't talk to any agreement. It talks to a certain agreement, an extension for 10 years on the same terms. That's the only question I had. Thank you very much for addressing that. Thank you, Your Honor. This is Judge Katz, and I have a question. And this relates to some of the previous questions and also the district court's determination. And the district court noted that when the parties in its view sought to provide for unilateral rights, they used the term, quote, unquote, each party. It is distinguished from the conjunctive TVP and STI. And when you look at the first sentence of Section 10.2, immediately following Section 10.1's extension provision, that says, and I quote, each party may terminate this agreement if the other party commits a significant violation of its provisions. And this language doesn't clearly create a unilaterally exercisable right to terminate the agreement, and doesn't stand in contrast to the use of the phrase, quote, unquote, TVP and STI in the previous sentence, which STI also contends creates a unilaterally exercisable right. I understood your question, Your Honor. The answer to your question is yes. The termination provision that follows, and is phrased as each party has the right, does provide for unilateral termination. But I can't agree that the prior expression, which is TVP and STI, is any different. They are each party. When I turned it around, in the district court, I said, this is something different than when, in this contract, when you want to talk about both parties doing something together, the contract uses 25 or 30 times, the parties. And he said, well, the parties are TVP and STI. But what that means is you're reading TVP and STI in the conjunctive for that clause, and I don't think you can. We're all lawyers on this phone, and I'm sure that we would have done something that drafted it differently, you know, made it more or less ambiguous so that we wouldn't be having this problem today. But we have to deal with that phrase that's in front of us, not that the fact that, oh, have they done this, or use this different word. We have to get at what the party's intent was when they used that expression. And unfortunately, for TVP, it can't be conjunctive because it really renders the option to extend completely meaningless. It wouldn't need to be in the agreement. It wouldn't need to provide for 10 terms, let alone, I'm sorry, 10 years, let alone 10 years, and successive options to extend. Why doesn't your argument about the surplusage make almost any extension providing, any extension provision in any contract surplusage? Since the parties could always enter into a new agreement changing the terms of the extension. Well, I'm not sure I quite got it, but you're right. And at any time, parties can agree to an extension. But usually in contracts, an option to extend is afforded to one party. Here, and you will see this in the extrinsic evidence, it's explained by SEI's principal, Bob Spansky. He wrote when TVP tried to make this mutual by adding language saying a mutually agreeable extension, and that language did not end up in the agreement. What he explained are the option rights, plural, he said, of TVP and SEI, protect our various interests. My interest is to continue this agreement, and your interest is to satisfy your statutory mandate of getting this programming out, and you've secured this very favorable royalty rate. If we're going to mutually agree in 25 years, it's going to be a total renegotiation is what he said. And that's why they didn't make this mutually agreeable. Thank you. You'll have two minutes for rebuttal. We'll now hear from your adversary. Good morning, your honors. May it please the court, John Vukel on behalf of defendant Tepeli Televisia Polska, SA. I'd like to address two main points in support of TVP's position. First, the district court made no error in following the fundamental rules of contract interpretation. It considered the plain meaning of the agreement. It considered the agreement as a whole. It considered whether the competing interpretations would be commercially unreasonable. And in so doing, the district court did not abuse its discretion. And second, this court may and should rule as a matter of law that the plain terms of the contract require mutual consent to extend. Such an unambiguous ruling will allow prompt resolution of the party's competing declaratory judgment claims, which turn purely on that legal question. Turning to the first issue, analysis of the agreement, the district court made no error of law, and the starting point is always to consider the language that the parties decided to use. The default is that and is conjunctive unless using it in such a sense would render the phrase incoherent. The phrase here, TVP and SEI may extend, clearly is not rendered meaningless if you use and in a joining or conjunctive sense. As the panel has noted, it's important then to look at the very next sentence as the district court did. The parties agreed on these words, each party may terminate. When the parties intended to provide for unilateral rights, they knew how to do it. They used different wording. And if the two consecutive sentences use different wording, they must mean something different. Appellant's arguments against this plain reading are misplaced. Spansky argues that the district court misunderstood its argument to be that the translation is wrong and it should be translated as TVP or SEI. That's simply not true. The district court acknowledged Spansky's argument. The point is that the parties chose the word and, and if they'd intended the meaning to be or, Spansky concedes and its expert law professor concedes that they could have used the Polish word for or, but they did not. Spansky also says we advance the singular argument that the word and must always be read in the conjunctive. And it argues that the district court improperly adopted that theory. But that wasn't our argument and that's not what the district court did at all. Judge Glantz. No, I, I, go ahead. No questions at this time. Sure. Thank you, your honor. Sure, there are times when and can be used in an enumerative sense, but it wasn't here and the examples Spansky offers do it no favors because they involve inherently individual actions. So the offered example of men and women have the right to vote, but two people don't vote together. They vote alone, regardless of how the other party may feel about it. Before the district court, they offered the example of something like Jack and Jill may use the bathroom, but it's understood that either person may go to the bathroom. That's not a joint activity. And they don't do it together under ordinary circumstances. Right. Here, TVP and SEI may extend. It's more like Jack and Jill may hold hands. You can't have one without the other. So from there, another necessary part of the analysis is to consider the agreement as a whole and not pluck words out of it, out of context, and read it such that each provision is given effect and not rendered commercially unreasonable. And several factors here support TVP's position at the district court's decision. First, as noted, the juxtaposition of the words in 10.1 versus 10.2. Second, contracts are joint endeavors. You need the consent of party A and party B. Third, an agreement was signed by mutual consent. It was amended twice by mutual consent. There's no reason to think the parties would want to depart from that course and allow a unilateral extension 25 years hence. And fourth, there's no mechanism for exercising this unilateral right. Under Spansky's view, it could have waited until the very final day of the agreement demanded a 10-year extension, and TVP would have had no choice but to allow it. And that's not reasonable, and that's not what the parties intended. And the 10-year extensions would go on forever, and that's not commercially reasonable in light of the full agreement. So we'd have to accept that the parties agreed to grant each other the right in 1994 that in 25 years and in 35 years and in 45 years and so on, you can just keep extending on the same terms negotiated in 1994, and that they would have done that with the bare bones phrase that you have in 10.1. The district court made no error in recognizing the implausibility of that. Now, part of this analysis, of course, is the concept of surplusage, and it's true that we should avoid a construction that renders a term mere surplusage. But surplusage comes into play only if the clause serves no function, and that's a really low bar. The wording in 10.1 does serve a function. As the district court recognized, the extension provision addresses the right to extend the agreement, and it serves the purpose of stating that it must be mutual, not unilateral. And contrary to what Spansky has argued, that was an explanation offered by TVP. It wasn't something concocted by the court. And for that, I would direct the court's attention to appendix page A698. It could also serve as a recognition by the parties that if there's an agreement to extend, it would be for a 10-year term. It's not unheard of for parties to identify expected terms for a future phase of the relationship for efficiency or other reasons. And so it's for that reason that we submitted last week with our Rule 28J letter, the PepsiCo case, which this court decided on September 29. We believe that's instructive. In PepsiCo, the contract was terminable at will, yet the parties included a clause listing five events that could be grounds for termination. Plaintiffs argued that those events were the exclusive basis for terminating the contract, and it argued that if defendants could terminate for some other reason, then what's the point of listing the five events? They're just surplusage. And in the decision written by Judge Sack, this court decided the argument. It did sound familiar, yes. I won't. I'll leave out the praise that I'd get. But yeah, the court explained that the clause was not necessarily surplusage and that it serves a cautionary function, alerting a party to conduct that might prompt one party to terminate. So our case today is not the same as PepsiCo, but the contract interpretation principle the court applied is instructive. The extension clause in 10.1 serves a function, identifying a possible extension criteria. You could say, as in PepsiCo, the extension clause wasn't necessary, but necessary is not the test. It serves a function. Now, appellant tries to. Judge Nardini, do you have any questions? No, thank you. I have a question. This is Judge Kastman. I understand your argument about the conjunctive and your citation to a number of cases, New York State cases. But it is the case, is it not, that and can encompass a disjunctive or enumerative meaning and that really the proper interpretation depends upon the context in which it is used. That is correct, Your Honor. We would agree with that. And we've not taken a contrary position at any point. And we do think the context here does lend to a conjunctive sense because the default is conjunctive. But even that aside, particularly when you look at 10.1 next to 10.2, there's a distinction between how the parties decided to phrase it when they determined they wanted a unilateral right versus something that required mutual consent. And it sort of lends into the other points about that an agreement is a joint activity where the examples where you see it used in an enumerative sense, it's really where you're trying to, where it's really just individual activities. So it's those examples that I went through where, you know, one person's right to vote doesn't really depend on another person's right to vote. You're just making clear that both of them can go ahead and vote. Both of them can go ahead and need bathroom. They're not going to do it together. An agreement, that's a joint activity. And it would be strange to bury such a powerful right of unilateral 10-year extension 25 years down the road in that sentence. Is it, as my adversary notes, is it the clearest sentence? I suppose all of us here, you know, may have come up with something stronger in whichever way, but you have to look at what it says and in the context of the agreement. And your final minute, let me ask you this, if you could say something a bit more about your adversary's argument that the district court erred in not considering and misconstruing extrinsic evidence of the party's contractual intent. Sure, Your Honor. So the extrinsic evidence, I mean, first, the, if both sides are saying it's plain and unambiguous, it was not an abuse of discretion for the court to agree with that and rule that the contract is plain and unambiguous. So we don't need to even go there. But it's incorrect for Spansky to say that the court ignored the extrinsic evidence because the court then did clearly reviewed it, spent more than a page in its decision in footnote five, summarizing and analyzing the extrinsic evidence. And at the end of the day, there's no evidence of intent or an agreement or even an inclination by TVP towards agreeing to a unilateral extension, right? At best, what you have, at best, it's inconclusive, but we would say it really goes the other way. Because TVP proposed some wording, and then within the span of four or five days, there's faxes exchanged where SEI proposed that or talked about a unilateral right, proposed some language that wasn't entirely clear, but maybe got the ball a little bit closer towards the unilateral right. And TVP didn't accept it, and it went back to the language that it had proposed, which is similar to what wound up in the very end. But if there's no clear agreement that, if there's no manifestation of an agreement from TVP that, yeah, this will be unilateral, it would be incorrect to impose that now. They never agreed to that. Thank you. We will now hear from your adversary, who has two minutes in rebuttal. Thank you, Your Honor. Just going to take up three points, and the court began to flush them out when my adversary was speaking. It is TVP's concession now that this clause can be read in the enumerative. It can be. Their own experts said, and there's no default rule that, oh, you default to a conjunctive reading when you're trying to determine the party's intent, nor is there a rule that if it's an action that you do alone, it means one thing, and if you do it together, it means another thing. The TVP's own experts give this example. Pete and Emma visit painting classes. It's ambiguous. It could mean in the enumerative sense that Pete goes to the painting classes, and Emma goes to the painting classes, and we totally agree from a FEI side. The second issue that you took up with my adversary was this question of, sure, everybody agrees that and can mean a conjunctive meaning, but does this clause have any meaning if you read it in the conjunctive? And basically, they repeated two separate arguments. One is that, oh, we're somehow pre-negotiating or pre-structuring some future contract. Well, that just renders the provision a complete nullity. It's not binding on anyone. It doesn't give anybody a right or an obligation, and then the second point they made is, well, this somehow makes clear that any extension requires mutuality of agreement. It doesn't make that clear. This clause talks specifically about 10 years on successive terms, and you can't get out to a mutuality without just taking a black marker and crossing that out entirely. And then the third thing is about the extrinsic evidence, and I appreciate that my adversary is trying to self-pedal it, but they clearly, TVP clearly doesn't want you to look at this evidence because there are multiple documents cited in the briefing that refer to this clause as a right. It's not a limitation on the ability to extend. There's a document where Spansky is talking about the proposed language to make it mutual, and he says, no, the rights of TVP and SEI to extend protect us both. We both have the right. That's why the word is plural. And there's no better indication that they didn't mean it to be mutual than TVP proposed to make it mutual, and Spansky says, no, I'm not going to do that. Had the clause already been the intent of the parties to be mutual, they wouldn't have needed to propose anything, and if Spansky intended it to be mutual, he would have said, fine, we can make that clarification, but he didn't. It was rejected. My adversary says that TVP never intended to grant this extension option, didn't mean to be bound, on and on, but they intended to be bound to the contract they signed, and that's what we would like to hold them to. So I'll end on that, Your Honor. Thank you. Thank you both for your arguments. The court will reserve decision.